BARRY, Judge.
The defendant was charged and convicted of second degree murder (La.R.S.14:30.-1) and sentenced to life in prison without *1125 benefit of parole, probation or suspension of sentence. We affirm.
PACTS[1]
The defendant claims his stepdaughter, Clarisse Smith, told him that someone was shooting a gun on their porch. He went downstairs and saw Arthur MacDonald, called the police, waited five minutes, then got a knife and went after MacDonald. Confusingly, he states MacDonald “ducked him”, but he saw MacDonald re-load the gun. He went home and left again to find MacDonald. The defendant hid behind a building and as MacDonald walked by he stabbed him three or four times in the chest and left the knife in the body. The defendant was arrested shortly thereafter at home.
The defendant said MacDonald could not have shot him because he (the defendant) was armed, nonetheless, he claimed MacDonald was also armed. He denied stabbing MacDonald in the back.
Alex Williams, an eyewitness, testified the defendant approached him before the murder and asked for a shirt. Williams responded he did not have a shirt and the defendant took off his shirt and dropped a knife from his hand.
According to Williams and two other eyewitnesses, the defendant left and returned with three men who walked through the driveway. As the men ran back, MacDonald walked into the driveway and the defendant stabbed him several times. The defendant turned to the eyewitnesses and said “you don’t see nothing”, then ran away. Williams said he did not see MacDonald with a gun and MacDonald could not see the defendant before the stabbing.
Gwendolyn Smith, the defendant’s girlfriend, testified that she, her children and the defendant were upstairs watching television and all ran downstairs when they heard someone knocking and kicking on the door. She said it was MacDonald looking for his girlfriend, Elizabeth. MacDonald had a shotgun and argued with the defendant who went to the kitchen and left through the back door. Smith heard a loud noise but did not know if it was a gunshot. She said the defendant called the police.
Clarisse Smith, the defendant’s stepdaughter, testified that MacDonald was intoxicated and mad and looking for Elizabeth who allegedly had his pistol. He was told Elizabeth (who was living with the defendant’s family) was not there and he got into an argument with the defendant. Clarisse contradicted herself by saying Elizabeth was in the house and argued with MacDonald and the defendant.
According to Clarisse, MacDonald left but returned a few minutes later with a shotgun. She heard a noise which might have been a gunshot and MacDonald ran “behind” Clarisse and her friends who went into a store. Clarisse returned home, ran upstairs and called the defendant. She denied telling the defendant that MacDonald fired a shot.
Dr. Gerald Liuzza, the Coroner’s pathologist, testified that MacDonald had been stabbed thirteen times, one of which could be considered frontal. He concluded MacDonald died due to blood loss from stab wounds to the upper back and left side of the neck.
Dr. Liuzza, an expert on the effects of alcohol, said MacDonald’s blood alcohol level was .28 grams and stated that was a very high intoxication level. He described the possible effects as a loss of muscular coordination, staggering, and speech slurring. Under cross-examination he noted that a person “could act in a manner contrary to his loss of motor functions.”
Officer Don Simmons testified that MacDonald was lying in a driveway and had multiple stab wounds and no sign of life. He did not find a weapon. He said three eyewitnesses pointed out the defendant as the perpetrator and an unsuccessful chase ensued.
Officer Lionel Adams testified that he checked the NOPD communications division computer to ascertain whether a call had been made and none was recorded from the defendant’s residence.
*1126 ASSIGNMENT # 1
The defendant contends the trial court erred by admitting hearsay.
Hearsay is testimony or written evidence of an out of court statement which is being offered to show the truth of the matter asserted, and its value is based on the credibility of the asserter. State v. Martin, 356 So.2d 1370 (La.1978).
To rebut the defendant’s claim that he called the police, Officer Adams stated that no calls were received from the defendant’s residence. No foundation was laid for the officer’s statement which was admitted over a defense objection.
The computer printout could have been submitted with the proper foundation under the business record exception to the hearsay rule. State v. Hodgeson, 305 So.2d 421 (La.1974). The statement was undoubtedly offered to show the truth of the matter asserted, but there was no foundation for it to be under the business record exception. Therefore, Officer Adams’ testimony was hearsay and should have been excluded.
If a reviewing court is able to determine beyond a reasonable doubt that the improperly admitted hearsay did not contribute to the verdict, then the error is harmless. State v. Banks, 439 So.2d 407 (La.1983).
This hearsay testimony related only to the defendant’s claim that he had phoned the police after MacDonald allegedly fired a gun. That peripheral matter does not materially affect the defendant’s and three eyewitnesses’ statements that the defendant attacked MacDonald without warning and repeatedly stabbed him.
The hearsay testimony was harmless.
ASSIGNMENT # 2
The defendant contends he was denied the right to confront and cross-examine witnesses.
On the first day of trial during direct examination by the State, Officer Simmons was questioned about events after he arrived at the murder scene. He started to explain why he suspected and chased the defendant and the defense’s objection was overruled. On cross-examination the defense asked if all of the eyewitnesses had reported “basically the same thing.” At that point the court stated:
We are not going to go into that. You are doing the same thing you objected to.
The witness stepped down but was not released.
During the testimony of the State’s final witness, Dr. Liuzza, trial was recessed until 9:00 a.m. the following morning due to an emergency involving a member of defense counsel’s family.
As its first witness, the defense called Officer Simmons:
[BY DEFENSE COUNSEL]
I call Officer Simmons.
BY THE COURT:
You’re calling him as your witness?
[BY DEFENSE COUNSEL]
Correct. I think if we approach the bench I think there is a possibility we can alleviate to have [sic] the need of the officer testify.
(AT THIS TIME THERE WAS AN OFF THE RECORD DISCUSSION HELD.)
BY THE DEPUTY:
No response.
BY THE COURT:
I’m not responsible for the State’s witnesses that have already testified, who you had a chance to cross-examine—
[BY DEFENSE COUNSEL]
I didn’t dismiss him from the subpoena. BY THE COURT:
It was not your witness to dismiss or otherwise. Let’s proceed with what witnesses you have here.
[BY DEFENSE COUNSEL]
I take it for granted you couldn’t locate him?
[BY THE STATE]
I take it for granted, Mr. Zibilich [defense counsel], he is not here. We don’t know where he is.
[BY DEFENSE COUNSEL]
Well, I would like to have him.
BY THE COURT:
*1127 Let’s put it this way. You can put it on the record. If he is not out there, we’re going to proceed without him.
[BY DEFENSE COUNSEL]
Would the Court try to have him located? [BY THE STATE]
He is in the third district.
BY THE COURT:
Call your office and have them locate him. That’s why you have an investigator.
Defense counsel then presented his witnesses. Just before resting, defense counsel requested a recess:
[BY DEFENSE COUNSEL]
Your Honor, at this time I would ask for about a four and a half minutes recess.
BY THE COURT:
I don’t know what you’re going to do with that. Because if it’s what you’re saying, you can’t do it.
[BY DEFENSE COUNSEL]
I would like to make a proffer out of the presence of the jury.
[BY THE STATE]
Judge, can we step inside your chambers for a minute?
(AT THIS TIME THERE WAS AN OFF THE RECORD DISCUSSION HELD.)
BY THE COURT:
Let’s go on the record.
[BY THE DEFENSE]
I’m just going on the record to ask for a recess for purposes of subpoenaing one Officer Simmons.
BY THE COURT:
For what reason?
[BY DEFENSE COUNSEL]
To inquire of him about the people that he allegedly interviewed while on the scene.
BY THE COURT:
About what they told him?
[BY DEFENSE COUNSEL]
About whether or not — About what they told him and whether or not he put whatever it was that they told him in his police report.
BY THE COURT:
Your motion is denied for the reason that you did [sic] lay a proper foundation to impeach the testimony of any of those three witnesses when you had the officer on cross-examination. You also had the preliminary report in your possession furnished to you by the State. Since you did not lay the proper foundation, even if Officer Simmons were here, and you have already previously cross-examined him, if he were here now you could not use him to impeach the testimony of any of the witnesses since you did not lay the foundation during their testimony for introducing impeachment evidence by warning them and stating to them what they are alleged to have said to this officer the night they were interviewed. For that reason, Officer Simmons could not testify for the reason for which you have requested him.
[BY DEFENSE COUNSEL]
Let me just clarify one small matter. I was not going to use the officer for impeachment purposes, but to only inquire of him whether or not statements that he might have taken from those three witnesses appear in his report and why not.
BY THE COURT:
You were furnished the copy of the preliminary report, which is all that the law requires. You made no objection at any time until this moment as to what is in that report. Therefore, I rightfully assumed that you were satisfied that the requirement of law, relative to the furnishing you of the preliminary report, have been satisfied. You can not now later in the case, even though you have had an opportunity to look at the file, state what you want to do now. Because it’s too late for that. What you’re saying is the same thing that I said. Because you would have been inquiring from him what these people told him, which would be hearsay and which would not be admissible since no foundation had been laid for impeachment.
The defendant then proffered Officer Simmons’ police report. The defendant’s appellate brief notes that the proffer is *1128 missing. No suggestion was made as to what the report would reveal.
In seeking a recess to secure the presence of a witness
[A] party must show the actual necessity for the witness and the materiality of his expected testimony, a probability that the witness will be available at the time to which the trial is deferred and due diligence in attempting to procure the witness for trial. Generally, the due diligence requirement is not satisfied where defense counsel fails to have the potential witness subpoenaed.
State v. Jackson, 450 So.2d 621, 631 (La.1984). Denial of a motion to recess will not be overturned on appellate review absent a clear abuse of discretion. Jackson, 450 So.2d at 631.
Officer Simmons was not subpoenaed as a defense witness. The defendant sought to subpoena the officer as his witness at the end of testimony on the second day of trial. The defendant should have previously subpeonaed the officer for the second day of trial. At the end of the first day of trial, the testimony of the officer and the eyewitnesses was complete. Even if defense counsel could not have anticipated his need for that testimony before trial, he would have been able to ascertain it by the end of the first day of trial.
Moreover, since the officer had presumably not been released from the State’s subpoena, the defendant could have obtained the officer's presence without a subpoena by having the officer notified that further testimony was required.
The defendant urges he was entitled to recall Officer Simmons for impeachment purposes, but does not explain how not recalling Officer Simmons after he had been cross-examined prevented the defense from impeaching the witnesses. Defense counsel clearly stated that the purpose of the recall was not impeachment.
The defendant relies on State v. Davis, 498 So.2d 723 (La.1986). In Davis the key issue involved identification of the defendant by the robbery victim nine months after the robbery. Two defense witnesses testified that just after the robbery, the victim had said she had not seen the perpetrator’s face. When another witness was asked to relate what the victim had said, the trial judge interrupted, though the prosecution had not objected, and stated no foundation had been laid to impeach the victim. The defense motion to recall the victim to lay the proper foundation was denied.
Davis stated that the purpose of the foundation requirement, to avoid surprise and insure a fair opportunity to the witness to explain the inconsistency, could have been fulfilled by recalling the witness, who was still available, to admit or deny making the statement. Alternatively, the inconsistent statement could have been admitted and the State could have recalled its own witness to explain any inconsistency. The Court explained:
Virtually the entire case for the prosecution rested on the strength of the victim’s identification, and the exclusion of any significant evidence undermining that identification infringed on defendant’s constitutional right to present a defense without serving any useful purposes.
Davis, 498 So.2d at 726. The Court held that the trial judge abused his discretion by refusing to permit recall of the victim.
The facts in this case are distinguishable from Davis. When making the motion to recall Officer Simmons, defense counsel did not indicate which part(s) of the three eyewitnesses’ testimony may have been contradicted by a prior statement or how they could have been contradicted. No motion to recall any of the eyewitnesses was made, nor does the record reflect if any were available for recall. Importantly, the most damaging evidence against the defendant was his confession. The testimony of the eyewitnesses corroborated the defendant’s version of the attack.
To allow recall of a witness is within the discretion of the court. State v. Griffin, 288 So.2d 636 (La.1974).
We find no abuse of discretion.
*1129 The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The sequence of events is unclear and the witnesses’ testimony is confusing.