| iPLOTKIN, Judge,
dissenting.
Appellant contends that the only witness for the State to identify West as a perpetrator was concealed from the defense prior to trial and that this witness was unreliable and biased.[1] According to the appellant, the State failed to prove West’s identity as perpetrator beyond a reasonable doubt. Specifically, appellant challenges Johnson’s in-court identification as untimely, unreliable, and prejudicial; and complains that the State succeeded in introducing two hearsay identifications to impermissibly bolster Johnson’s identification. According to the appellant, considering the record as a whole without hearsay, the State failed to prove that Troy West shot and killed Isaac Wilson.
Joyce Johnson was the only witness at trial to identify West as a shooter. Johnson, who had not made any pretrial identification, identified West, with whom she was familiar, in court as the shooter in an event that occurred approximately one year before trial. In State v. Johnson, 343 So.2d 155, 160 (La.1977), the Louisiana Supreme Court found that in-court identification procedures were not unduly suggestive because the identifying properties of the witness chair could be remedied on cross examination. Although in the instant case, defense counsel had |2the opportunity to cross examine Johnson and put the issues of her unreliability and bias before the jury, and the defense was notified twelve days before trial in the supplemental answers to defendant’s bill of particulars that Johnson would be compelled to testify, Johnson’s in-court identification was impermissi-bly bolstered by hearsay identifications, discussed below, to appellant’s prejudice.
Appellant complains that identifications of West by Major, who was absent, and by Hendrix, who was deceased, were admitted through the testimony of Bridgewater and Mims. According to the appellant, although neither witness relayed verbatim the hearsay identifications of Hendrix and Major, from the testimony of Bridgewater and Mims it could be inferred that Major and Hendrix had both identified West as the shooter. The majority, however, finds Bridgewater’s testimony to be devoid of hearsay, Mims’s to be permitted as an explanation of a police investigation, and error, if any, to be harmless.
Bridgewater later affirmed, out of the presence of the jury, that Hendrix had made an out-of-court statement to her that West had shot him. This statement was not made under belief of impending death. The statement is hearsay and no exception renders it admissible. Although Bridgewater did not relay Hendrix’s statement verbatim to the jury, it would have been extremely difficult for the jury to hear Bridgewater’s testimony that she was surprised at who shot her son, which was presented in the context of her own and her son’s familiarity with West, without inferring that Hendrix told her that West shot him.
In determining whether a hearsay identification that is indirectly placed into evidence should be deemed harmless error, we must determine beyond a reasonable doubt that the identification did not contribute to the verdict in light of the importance of this testimony in the prosecution’s case, whether the testimony is cumulative, any corroborating or contradicting evidence, the extent of cross-examination, and the overall strength of the prosecution’s case. See State v. 3Wille, 559 So.2d 1321, 1332 (La.1990); see also State v. Veals, 576 So.2d 566, 568-69 (La.App. 4th Cir.), writ denied, 578 So.2d 931 (La.1991). It is difficult to say beyond a reasonable doubt that Bridgewater’s testimony was harmless. This testimony encour *552 aged the jury to infer that Hendrix told Bridgewater that West shot him. The only other clear identification of West as the shooter was Johnson, whose testimony conflicted with Dawson, Fleming, and Anderson, and was not corroborated by Thompson, who was the prosecution’s other eyewitness to the shooting. This indirect hearsay was not cumulative with or corroborated by other testimony and not readily subject to cross examination.
In contrast, Mims’s testimony required a greater inferential leap by the jury than Bridgewater’s. The Louisiana Supreme Court, however, discussed testimony like Mims’s in State v. Wille, 559 So.2d 1321, 1331 (La.1990) (footnotes and citations omitted), stating,
Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer’s presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse. Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of this out-of-court information that would otherwise be barred by the hearsay rule.
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the non-hearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
UMims’s testimony, like the testimony in Wille, had only marginal relevance at trial. Combined with Bridgewater’s testimony, it tended to impermissibly bolster Johnson’s identification of West as the shooter.
Appellant also contends that West’s rights to a fair trial and due process of law were violated by the State’s repeated and persistent efforts to introduce evidence of West’s alleged other bad acts. According to the appellant, the prosecution depicted West as a person who had threatened witnesses and encouraged others to do so, participated in the murder of Hendrix, and participated in a robbery.
From a review of the record it is apparent that throughout the trial, hearsay was used to create the impression that West had threatened witnesses, possibly killed Hendrix, and had previously participated in a robbery. Officer Mims testified that he interviewed Thompson at a hotel and sent Thompson and Major to California after Hendrix was killed because they had told him that their lives were in danger. Thompson testified that she went to California after Hendrix was killed because there was a rumor that she was in danger, and she testified that Major’s family was also scared for Major’s life. Johnson testified that she only came to court under a subpoena because she knew that West had put a hit out on her. Johnson explained that she could identify West and Evans because her brother had told her that West and Evans had robbed him. The defense’s objections to hearsay were sustained and the prosecution was admonished repeatedly. The court instructed the jury that the only crime Troy West was on trial for was the murder of Isaac Wilson, and the court denied the defense’s motions for mistrial.
It is clear that the prosecution engaged in low-level but constant and repeated misconduct in this trial. In fact, in a bench conference in one instance, the prosecution explained to the trial judge that such tactics were necessary to respond Isto the likely *553 defense that there was insufficient evidence. Given the cumulative effect of the lack of evidence that West was the shooter, the admission of hearsay from which it could be inferred that out-of-court declarants had identified West as the perpetrator, and the repeated admission of hearsay that suggested that West had threatened witnesses, killed Hendrix to prevent him from testifying, and had engaged in other bad acts, I cannot find beyond a reasonable doubt that all of this when combined was harmless and did not contribute to the verdict.
Accordingly, I respectfully dissent and would reverse the conviction and sentence and remand the case for a new trial.

. Johnson was unreliable according to the appellant because the crime occurred approximately one year before the in-court identification and because she was running away or falling during the events she observed. Johnson was biased according to the appellant because she admitted that she disliked and feared West and because she believed that West had robbed her brother. Appellant also notes that Johnson did not stay at the scene, did not give a prior description or make a prior identification to compare with the in-court identification, that her testimony was inconsistent with other witnesses, and that she had been convicted of distribution of cocaine.