576 So.2d 566 (1991)
STATE of Louisiana
v.
Ricky VEALS.
No. 90-KA-0163.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1991.
Writ Denied May 2, 1991.
*567 Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant-appellant Ricky Veals.
Before KLEES, BYRNES and WILLIAMS, JJ.
KLEES, Judge.
On February 4, 1988 the defendant was indicted by a Grand Jury of first degree murder, a violation of R.S. 14:30. He pled not guilty was tried by jury on February 15, 16 and 17, 1989 and found guilty as charged. He was sentenced on March 6, 1989 to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in allowing Michael Kenner to testify regarding what Stephen Ragas one of the victims told him in a telephone conversation Kenner had with Ragas shortly before the murders because the testimony was inadmissible hearsay.
The defense orally sought a motion in limine before Kenner took the stand to prohibit the State from eliciting testimony from Kenner regarding what Ragas told him in the telephone conversation he had with Ragas immediately before the murders occurred. Ragas told Kenner that Veals and Braggs were at Bertrand Castille's house. The trial court indicated that it would allow Kenner to testify that he called Castille's house and spoke to Ragas, but would not allow Kenner to testify that Ragas told him that the defendant Ricky Veals and Dwayne Braggs were in the house.
During the direct examination of Kenner, the State, before it got into the telephone conversation Kenner had with Ragas, elicited from Kenner that Kenner knew Veals and Braggs and that he had seen them together an hour or so before the murders occurred, driving toward New Orleans East.
The following testimony was then elicited by the State from Kenner on direct regarding the telephone conversation Kenner had with Ragas:
Q. Do you recall what time you spoke to Steven Ragas over the phone?
A. Yes.
Q. What time was that?
A. Maybe 5 after 1.
Q. Approximately 1:05?
A. 1:05.
Q. Now, did you talk to Steven?
A. Yes, I did.
Q. What did you ask him?
A. What was taking them so long.
*568 Q. Okay, And, did he respond?
A. Yes, he did.
Q. And, did you ask him anything else?
A. Yes.
Q. What did you ask him?
A. When he was coming.
Q. And, did he respond to that?
A. Yes.
Q. Did you ask him any other questions?
A. Who was in the house?
Q. Okay. You have to speak louder. You asked him what?
A. Who was in the house?
Q. Did he answer?
A. Yes.
Q. Why did you ask who was in the house?
A. I heard a lot of noise.
Q. You heard a lot of noise?
A. Um hum.
Q. Now, he gave you an answer to that question?
A. Right.
Q. Now, the people that he answered to, did you know those people?
A. Yes.
Q. Now, did he ever indicate to you whether Bert Castille was anywhere around?
A. No.
Q. Now, the names that he had given you that were in the house, had you seen those people before?
A. Yes.
Q. Had you seen them earlier that day?
A. Yes.
Q. Where had you seen them?
BY MR. MERRITT:
Your Honor. That is the very same thing, and move for the relief under the code.
 Tr. 186-187.
The last question above was to elicit from Kenner that the two people that Ragas had said were at Castille's house were the same people that Kenner had seen earlier that day driving toward New Orleans East, that is, Veals and Braggs. The State was thus trying indirectly to get the contents of the hearsay statement by Ragas, that Veals and Braggs were in the house, into evidence.
The first issue is whether hearsay testimony was actually admitted into evidence. Hearsay is testimony or written evidence of an out of court statement, which is being offered to show the truth of the matter asserted, and its value is based upon the credibility of the asserter. State v. Ray, 542 So.2d 1124 (La.App. 4th Cir. 1989). Kenner never actually testified that Ragas told him that Veals and Braggs were in the house. The court cut off the State's line of questioning before the hearsay statement itself came out.
While an argument can be made that no hearsay was admitted into evidence, the State asked Kenner 1) had he talked to Ragas, 2) had Ragas told him who was in the house, and 3) had Kenner seen the people Ragas mentioned earlier that day. Kenner responded "yes" to each question. Kenner had testified earlier that he had seen Veals and Braggs before the murders occurred driving toward New Orleans East. Thus the jury would logically infer from this testimony that Ragas told Kenner that Veals and Braggs were in the house. As this hearsay statement was indirectly placed into evidence, we must be able to determine beyond a reasonable doubt that the improperly admitted hearsay did not contribute to the verdict in order for the admission of the hearsay statement to be deemed harmless error. State v. Banks, 439 So.2d 407 (La.1983), appeal after remand 482 So.2d 92 (La.App. 4th Cir.1986); State v. Wells, 538 So.2d 1053 (La.App. 4th Cir.1989), writ den. 546 So.2d 1210 (La.).
Factors to be considered in making this determination include 1) the importance of the witness's testimony; 2) the cumulative nature of the testimony; 3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. State v. Wille, 559 So.2d 1321, 1332 (La.1990).
In this case, the witness's testimony was important to corroborate the testimony of *569 Braggs, the defendant's alleged accomplice and the State's primary witness. Corroboration was particularly important since Braggs' credibility was called into question because of a "deal" which he had cut with the D.A.'s office and because of the testimony of the seven inmates incarcerated with Braggs who testified that Braggs had told them that Veals did not commit the murders. Without Braggs's testimony, the State's case was weak. No physical evidence linked Veals to the crime. Moreover, several alibi witnesses testified that Veals was elsewhere when the murders occurred. Kenner's testimony is the only other testimony that puts Veals at the crime scene.
On the other hand, Kenner's testimony is cumulative. Braggs testified in detail regarding Veals' presence at the crime scene and the specifics of the murder. Officer Adams also testified that he arrested Veals based upon unspecified information provided to him by Kenner. Notwithstanding the cumulative nature of the testimony, it is not possible to conclude that the statement did not contribute to the verdict beyond a reasonable doubt. The statement corroborated Braggs' testimony, the credibility of which was strongly contested. Without it, the jury might have had a more difficult time accepting Braggs' testimony and rejecting the testimony of the defendant's alibi witnesses. Accordingly, we conclude that the trial court committed reversible error in allowing the contents of the hearsay statement into evidence.
Our finding of reversible error precludes a discussion of the remaining assignments of error. Accordingly, for the reasons expressed above, the conviction and sentence of defendant Ricky Veals are hereby reversed and this matter is remanded to the trial court for retrial.
REVERSED.