826 So.2d 616 (2002)
STATE of Louisiana
v.
Benjamin LEE.
No. 2001-KA-2082.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 2002.
*620 Harry F. Connick, District Attorney, Donna R. Andrieu, Assistant District Attorney, Cate L. Bartholomew, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Benjamin Lee appeals his conviction for aggravated battery and his sentence of life imprisonment, without benefit of parole, probation or suspension of sentence as a third felony offender. For the following reasons, we affirm the conviction and sentence.

STATEMENT OF CASE:
Defendant Benjamin Lee was charged by bill of information with aggravated battery, a violation of La.Rev.Stat. 14:34. On May 22, 2000, at the conclusion of a one-day bench trial, Lee was found guilty as charged. Thereafter, the State filed a multiple bill charging Lee as a third felony offender.
On July 7, 2000, Lee was sentenced to thirteen months with credit for time served. He filed motions to reconsider sentence, for judgment notwithstanding the verdict and for a new trial, all of which were denied; additionally, Lee filed, and the trial court granted, a motion for appeal. On that same day, the court proceeded with the multiple bill hearing, and adjudicated Lee a third felony offender. On July 11, 2000, the trial court vacated the original sentence, and imposed a life sentence without benefit of parole, probation or suspension of sentence, with credit for time served.

STATEMENT OF FACT:
Officer Johnnie Carter testified that on February 22, 2000, he responded to a domestic disturbance call at 3930 Gibson Street. When he arrived on the scene, he found the victim, Tanesha Marcelin, crying and in pain. Carter learned that the victim and Benjamin Lee, the victim's former boyfriend, got into an argument during which Lee struck Marcelin on her leg with a hammer and in the face with a lamp. When she screamed, her cousin Kenneth came to her aid, and was punched by the defendant. Officer Carter noted bruises, cuts and lacerations on the victim's face and bruises on her left leg, which appeared to have been inflicted by an object. Marcelin told the officer she wanted to press charges against Lee. No weapon was *621 recovered from the house. Officer Carter further testified that he interviewed the victim's cousin, Kenneth, who told him that when he tried to stop Lee from attacking the victim, Lee struck him in the face with his fist. Officer Carter photographed the victim's injuries, completed his initial report, and turned the matter over to Detective Doug Eckert for further investigation.
The victim's mother, Ms. Shwanda Marcelin, testified that her daughter and Lee dated for two years. Ms. Marcelin visited the victim on the day of the incident, and observed the victim's swollen leg and bite marks on her face. Ms. Marcelin identified photographs introduced at trial as depicting the victim's injuries. She brought to court a letter, which she found on the victim's kitchen table. The letter was inside an envelope addressed to the victim at her home, and showed Benjamin Lee's name and the address of the Orleans Parish Jail as the return address. The letter was post marked May 2, 2000. Ms. Marcelin identified the handwriting and the signature on the letter as belonging to the defendant. She read from a part of the letter in which the writer asks the recipient not to testify against him at trial.
Detective Doug Eckert testified that he performed the follow up investigation in this case, and interviewed the victim by telephone. The victim told him that she and Lee argued and that Lee struck her with a hammer. She also told him that Lee hit her cousin, Kenneth, with his fist when Kenneth came to her aid. The victim stated she wanted to press charges against Lee. Detective Eckert also interviewed Kenneth who corroborated the victim's rendition of the incident and the injuries sustained. Eckert further testified that based upon his investigation, he obtained an arrest warrant for Lee on the charge of aggravated battery of Tanesha Marcelin.
Neither the victim nor her cousin testified at the trial.
The defense called no witnesses.

ERRORS PATENT:
A review of the record reveals one error patent. The district court denied defendant's motion for new trial on July 7, 2000, and sentenced him that same day. La.Code Crim. Proc. art. 873 requires a twenty-four-hour delay between the denial of a motion for new trial and sentencing, unless the defendant waives such delay. There is no indication defendant waived the delay. This Court has held that where a defendant shows no prejudice and does not challenge his sentence on appeal, any error in failing to observe the twenty-four-hour delay is considered harmless. State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, 566.
Though defendant in this case does challenge his sentence on grounds of excessiveness, he has failed to show any prejudice from the failure to observe the delay. Lee's original sentence, imposed the same day the district court denied his motion for new trial, was set-aside on July 11, 2000, when he was adjudicated a habitual offender and sentenced pursuant to La.Rev.Stat. 15:529.1. See State v. Jones, 97-2217 (La. App. 4 Cir. 2/24/99), 731 So.2d 389. Moreover, because the defendant's life sentence is mandatory under La.Rev.Stat. 15:529.1, the court's failure to observe the statutory delay is considered harmless error. State v. Hebert, XXXX-XXXX (La.App. 4 Cir. 4/11/01), 787 So.2d 1041, 1050, writ denied, State ex rel. Hebert[1]v. State XXXX-XXXX (La.3/15/02), 811 So.2d 905. Accordingly, *622 Lee is not entitled to any relief as a result of this error.

ASSIGNMENT OF ERROR NO. 1:
In the first of five assignments of error, Lee argues that the record fails to show that he made a knowing and intelligent waiver of his right to a jury trial.
Louisiana Code Criminal Procedure art. 780(A) provides that a defendant charged with an offense other than one punishable by death may "knowingly and intelligently waive a trial by jury and elect to be tried by a judge," and that "[a]t the time of arraignment, the defendant shall be informed by the court of his right to waive trial by jury." The waiver of the right to trial by jury cannot be presumed. State v. Comeaux, XXXX-XXXX (La.App. 4 Cir. 11/21/00), 774 So.2d 322, 324. The waiver must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused. State v. Wolfe, 98-0345 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093, 1097, writ denied, 99-1460 (La.12/10/99), 756 So.2d 281, cert. denied, Wolfe v. Louisiana, 529 U.S. 1115, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000).
The record in this case contains the transcript of Lee's May 22, 2000, waiver of his right to a jury trial. The transcript indicates that the judge addressed and questioned Lee in the presence of his attorney: "Sir, do you understand you have a right to trial by judge or jury?" Lee responded affirmatively. The judge continued: "Tell me what type of trial you elect to proceed by." Lee replied: "I would like to go with a judge." The record clearly establishes that Lee articulated his desire to waive his right to a jury trial.

ASSIGNMENT OF ERROR NO. 2:
In his second assignment, Lee contends that the State failed to prove him guilty of aggravated battery. He advances dual arguments: first, he argues that the State failed to prove the corpus delicti, and second, that the evidence was insufficient to support the conviction.
In State v. Brown, 236 La. 562, 108 So.2d 233 (1959), the Louisiana Supreme Court outlined the rule of law regarding corpus delicti:
In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti, or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand....
Suspicion, rumor, gossip, or mere hearsay evidence is not sufficient to establish the proof of corpus delicti, ....
108 So.2d at 236.
Simply stated, the rule of corpus delicti states that no one can be convicted of a crime without proof that the incident occurred and that the incident was the result of some person's criminal activity. State v. Plaisance, XXXX-XXXX (La.App. 4 Cir. 3/6/02), 811 So.2d 1172.
The corpus delicti must be proven by evidence that the jury may reasonably accept as establishing that fact beyond a reasonable doubt. State v. Carson, 336 So.2d 844 (La.1976); State v. Brown, supra. The rule does not require the State to establish a "corpus delicti" for the degree of the offense. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 928, cert. denied, Thibodeaux v. Louisiana, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Therefore, in this case, the State need only establish the elements of battery, not the elements of aggravated battery, to prove the corpus delicti.
Battery, as it pertains to this case, is defined as the intentional use of force or *623 violence upon the person of another. La. Rev.Stat. 14:33. Simple battery is a general intent offense. State v. Comeaux, 249 La. 914, 192 So.2d 122, 125 (1966); see also La.Rev.Stat. 14:11. General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La.Rev.Stat. 14:10(2). Accordingly, the State is required to prove that the defendant intentionally used force or violence upon the victim without her consent.
In this case, the State offered the testimony of Officer Johnnie Carter, as well as his photographs of the victim's injuries. Officer Carter testified that when he arrived on the scene he found the victim crying and obviously in pain from bruises, swelling and lacerations on her body. The officer's testimony further showed that the victim's cousin corroborated the victim's statement that Lee hit her. Despite Lee's contention to the contrary, the source of the testimony is irrelevant to the establishment of the corpus delicti, so long as the statements are not those of the accused. See Brown, Plaisance and Thibodeaux, supra. No rule requires the State to establish the corpus delicti by no other means than through the testimony of the victim of the crime. Cf. State v. Dorsey, 34,977 (La.App. 2 Cir. 9/26/01), 796 So.2d 135 (evidence found sufficient to prove homicide despite the fact that no body was ever recovered and no witnesses to the homicide were located); see also State v. Henderson, 352 So.2d 206 (La. 1977).
In this case, the State presented evidence that Lee intentionally used force or violence upon the victim without her consent. This portion of Lee's argument is without merit.
As to the second argument in this assignment concerning sufficiency of the evidence, he contends there was no testimony, other than the hearsay testimony of the police officers, to suggest that an aggravated battery had occurred.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1134. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In this case, the State charged Lee with one count of aggravated battery in violation of La.Rev.Stat. 14:34 which defines the offense as "... a battery committed with a dangerous weapon." A battery, as applied in this case, is "the intentional use of force or violence upon the person of another ...." La.Rev.Stat. 14:33. "Dangerous weapon" includes any ... instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La.Rev.Stat. 14:2(3).
Contrary to Lee's assertion in this case, the State presented both testimonial and photographic evidence of physical injuries sustained by the victim. Evidence that the victim's injuries resulted from a dangerous weapon constitutes sufficient evidence to sustain that element of *624 the crime. The law does not require that the State exclude every hypothesis of how the victim received her injuries. State v. Lee, 446 So.2d 334, 342 (La.App. 4 Cir. 1984) (finding that the State's failure to link a gun found approximately eight blocks from the crime scene was irrelevant to the question of the sufficiency of the evidence). Moreover, the State presented a letter written by the defendant to the victim. In the letter Lee writes, "[Y]ou can't tell them the truth about me hitting you with a hammer if you want to help me." The letter continues, "[Y]ou have to lie .... Please don't tell the truth, because you said they are trying to give me life.... Bae, you can't take the stand on me that is the bottom line, there's no if's and's or but's about it, because if you do and tell them what happened I'm gone for life or a very long time."
Precedent exists for upholding victim cases where the State does not call the victim to testify. In State v. Preston, 98-0180 (La.App. 4 Cir. 11/10/99), 752 So.2d 211, this Court found sufficient evidence to sustain a conviction for first degree robbery despite the State's failure to call the robbery victim as a witness at trial. The Preston panel cited the defendant's confession to the crime. Id. at 216. See also State v. Guillot, 526 So.2d 352 (La.App. 4 Cir.1988) (upholding a conviction for aggravated battery where the victim failed to testify at trial).
A conviction cannot stand if no rational trier of fact could find the defendant guilty as charged based on the record as a whole. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The appellate court reviews the record in its entirety because a rational trier of fact would consider all of the evidence presented. The appellate court presumes that the trier of fact acted rationally. Id. Rational credibility calls, rational decisions on the weight of the evidence, and rational inferences drawn from the evidence must stand. Id. Applying the foregoing standards to this case, it does not appear the trial court erred in concluding that the evidence is sufficient to support Lee's conviction for aggravated battery.

ASSIGNMENT OF ERROR NO. 3:
By this assignment, Lee complains that the trial court erred by admitting into evidence the letter he allegedly wrote from jail to the victim. He contends that the victim's mother's testimony was insufficient to authenticate the letter and to identify the handwriting as his.
The initial authentication decision as to admissibility of evidence is made by the trial judge, using the standard set forth in the Code of Evidence: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. Code Evid. art. 901(A). "[I]t is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question." State v. Hotoph, 99-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045.
The Louisiana Code of Evidence provides several ways in which writing can be authenticated at trial. First, a writing may be proven authentic by "nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation." La. Code Evid. art. 901(B)(2). Second, a writing may be proven authentic by, "[c]omparison by the trier of fact ... with specimens which have been authenticated." La.Code Evid. art. 901B(3). Finally, a writing may be proven authentic by *625 "[c]omparison by ... expert witnesses with specimens which have been authenticated." C.E. art. 901(B)(3).
In this case, the State attempted to satisfy the authentication requirement in two ways. First, the State attempted to admit into evidence other handwritten documents of the defendant. However, the trial judge sustained defense counsel's objection to their admission. Second, the State presented the testimony of Ms. Shwanda Marcelin, the victim's mother, who verified that her daughter and Lee dated for two years. Ms. Marcelin further stated that for several months during the time her daughter and Lee dated, they lived with her. Because of the living arrangements, Ms. Marcelin had the opportunity to witness Lee's handwriting and signature on many cards and letters.
The trial court was in the best position to evaluate Ms. Marcelin's credibility as a witness. A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435.
At trial Ms. Marcelin unequivocally testified that she recognized the handwriting on the letter as belonging to Benjamin Lee. In light of Ms. Marcelin's testimony, it does not appear the trial court erred in admitting the letter into evidence.

ASSIGNMENT OF ERROR NO. 4:
In a fourth assignment of error, Lee argues his counsel rendered ineffective assistance by failing to object to hearsay evidence.
Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where an evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983). The record in this case is sufficient to evaluate the merits of Lee's claim.
The appellate court analyzes ineffective assistance of counsel claims under the two prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Id. 466 U.S. at 687, 104 S.Ct. at 2064. Both showings must be made before it can be found that the defendant's conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim of ineffective assistance may be disposed of on the finding that either of the Strickland criteria has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5 Cir.1984).
In this case, Lee claims that his trial counsel rendered ineffective assistance by his failure to object to the hearsay testimony of Officer Carter and Detective Eckert.
The State argues that the hearsay testimony elicited from Officer Carter was admissible under an exception to the hearsay rule.
*626 In State v. Dalton, 99-0902, p. 3 (La. App. 4 Cir. 3/29/00), 759 So.2d 180, 181 this Court noted:
La. C.E. article 801 C defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. article 802 provides "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." La. C.E. article 803 provides excited utterances are not excluded by the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." La. C.E. article 803(2). This exception requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought process inoperative. State v. Reaves, 569 So.2d 650 (La.App. 2nd Cir.1990), writ den., 576 So.2d 25 (La.1991). Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978).
In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. State v. Reaves, supra. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Henderson, supra.

At the trial of this matter, Officer Carter testified that he responded to an emergency call for assistance. When he arrived at the scene, he observed the victim crying and in pain. At this point, immediately after making an emergency call for police assistance and while still visibly under the stress of the event, the victim stated that Lee struck her with a hammer. Moreover, at the motion hearing on May 5, 2000, in response to the question posed to him regarding how long after the incident the victim spoke with him, Officer Carter stated, "Probably minutes." The trial judge in this case heard this testimony prior to trial and deemed it admissible. Considering that Officer Carter arrived at the scene within minutes of the incident, and observed the victim's fear, agitation and pain, this testimony clearly fits within the excited utterance exception to the hearsay rule and was properly admitted into evidence. Given these circumstances, defense counsel's lack of objection to this testimony is not ineffective.
The State concedes that the testimony elicited from Detective Eckert constituted hearsay. Nevertheless, the erroneous admission of hearsay evidence is subject to the harmless error analysis. See State v. Allen, XXXX-XXXX (La.App. 4 Cir. 10/17/01, 800 So.2d 378, 399, citing a concurrence in State v. Veals, 576 So.2d 566, 568 (La.App. 4 Cir.1991). In Veals, this court set forth the following factors to be considered in determining whether the error was harmless:
1) the importance of the witness's testimony; 2) the cumulative nature of the testimony; 3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. State v. Wille, 559 So.2d 1321, 1332 (La.1990).
576 So.2d at 568.
Applying the foregoing rules to this case, first, Detective Eckert testified that he interviewed the victim over the phone for purposes of obtaining identifying *627 information needed for the arrest warrant application. It appears the primary purpose of his testimony was to lay the foundation for the introduction of the arrest warrant and establish the fact of arrest. Relatively speaking, Detective Eckert's testimony was insignificant. Moreover, in closing argument the State mentioned Detective Eckert's testimony only briefly. Second, Detective Eckert testified to the same facts Officer Carter testified to, hence, his testimony was cumulative. Third, the material point of Detective Eckert's testimony consisted of a statement made by the victim that Lee struck her with a hammer. This testimony was corroborated through the introduction of photographs of the victim's injuries taken at the scene moments after the incident, as well as Officer Carter's testimony. Further, the State corroborated the victim's mother's statement by introducing the letter written by Lee admitting his guilt. Fourth, there is nothing in the record to suggest that the trial court refused to allow Lee a full and fair opportunity to cross-examine Detective Eckert. Finally, the State introduced the "excited utterance" statements of the victim regarding the nature of the incident and the perpetrator of the incident. The State provided photographic and testimony evidence of the victim's injuries, as well as a letter written by the defendant admitting to the crime.
Considering the foregoing, the admission of Detective Eckert's testimony was harmless error, and the defendant's ineffective assistance of counsel claim as to this testimony fails the second prong of the Strickland test.

ASSIGNMENT OF ERROR NO. 5:
In his final assignment, Lee complains that his mandatory life sentence as a third felony offender constitutes an unconstitutionally excessive under State v. Dorthey, 623 So.2d 1276 (La.1993).
In State v. Dorthey, supra, the Supreme Court held that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment," or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." Id. at 1280-81.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra; State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. Id.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that "[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, supra.
In this case, Lee concedes the sentence imposed is the minimum possible sentence. However, he argues that inasmuch as the incident arose from a domestic dispute, that the victim's injuries were not serious, and that he used a hammer "rather than a more dangerous weapon, such as a gun or knife," the life sentence is excessive, and "any ordinary citizen would be shocked and outraged to learn that a life sentence could be imposed under the facts of this case."
*628 "[D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare instances." State v. Smith, XXXX-XXXX (La. App. 4 Cir. 12/20/00), 777 So.2d 584, 590 quoting State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. This case is not one of those "rare instances." Lee pled guilty to armed robbery on May 6, 1986. He has 1991 and 2000 convictions for attempted simple robbery and aggravated battery, respectively. His criminal history consists of crimes of violence and he offers no explanation for his recidivistic criminal conduct. Benjamin Lee is the type of recidivist criminal the Habitual Offender Law was designed to punish. He has failed to show that he is "the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."

CONCLUSION:
For the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] This Court's records indicate that the defendant's surname is spelled Hebert; however West Publishing Company records the spelling as Herbert on the Supreme Court's denial of writs.