977 So.2d 1101 (2008)
STATE of Louisiana
v.
Kendall WILLIAMS.
No. 2007-KA-0700.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 2008.
*1105 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Alyson Graugnard, Assistant District Attorney of Orleans Parish, Dayal Reddy, Rule XX Attorney, Loyola University of N.O., College of Law, New Orleans, LA, for Plaintiff/Appellee.
Jack H. Tobias, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
JAMES F. McKAY III, Judge.
STATEMENT OF THE CASE
The defendant Kendall Williams was charged by bill of information on March 12, 2006, with possession of cocaine, a violation of La. R.S. 40:967(C). The defendant pleaded not guilty at his September 8, 2006 arraignment. The trial court denied the defendant's motion to suppress *1106 the evidence on October 5, 2006. On December 5, 2006, the defendant waived his right to trial by jury and was tried by the court, which found him guilty as charged. On February 8, 2007, the trial court sentenced the defendant to two years imprisonment, suspended, and three years active probation with conditions.
FACTS
New Orleans Police Officer Lawrence Jones testified at trial that on May 12, 2006, he was driving in a marked police unit with Officer Victor Gant Jr., when he observed the defendant sitting on the doorstep of a porch at 1040 Clouet Street, a residence that had a "No Trespassing" sign posted on the door. During cross examination, the defense counsel cited the police report, written by Officer Jones, as stating that officers had received numerous complaints from concerned citizens and neighbors in the area about subjects loitering on their porches for the sole purpose of soliciting narcotics sales. Officer Jones said that when the defendant observed the officers he discarded an item out of his right hand. He later confirmed what he had written in his police report, that the defendant's eyes got big when he saw the officers, before he discarded the item. Officer Jones indicated that in his three years on the police department he had seen others discard items at the sight of police. Officer Jones said the defendant then stepped off the porch and walked toward the police unit. Officer Jones stated that he walked over and retrieved the discarded object, without losing sight of it. It was a clear plastic bag containing seventeen individually wrapped pieces of a white substance which the officer believed to be cocaine. The defendant was then arrested. Officer Jones said that the defendant was not booked with trespassing because the owner of the property could not be located. Officer Jones also stated that defendant told him that he resided at 1426 Marigny Street.
New Orleans Police Officer Victor Gant Jr.'s testimony tracked that of Officer Jones. Officer Gant noted that when the defendant observed the officers his eyes got big and he made a quick motion with his hand. Officer Gant confirmed that there was a "No Trespassing" sign posted on the door of the residence, and he was shown a photo of the residence at 1040 Clouet Street with a "No Trespassing" sign above the address. No one else was in the area. Officer Gant said that he called the defendant over and informed the defendant that there were complaints about trespassing at this location. He then inquired if this was the defendant's residence. The defendant said that he was not a resident at that location, but that he lived in the 1400 block of Marigny Street. Officer Jones advised Officer Gant that he had recovered the cocaine. Officer Gant arrested the defendant, handcuffed him, and advised him of his "Miranda rights." During the course of the arrest, four hundred fifteen ($415.00) dollars were seized from the defendant's person.
The defendant testified that on the day in question he was standing in front of the residence on Clouet Street, while four of his friends were sitting on the steps. He lived some six blocks away, and he and his friends used to hang out around the area. The defendant said he thought the officers stopped him because he had fled from them two days earlier; he thought he "had a warrant, or whatever," for "some tickets or whatever." The defendant said the officers were lying by saying that they saw him throw something. He said no one else threw anything either. He testified that the officers did not find anything on the ground, even though one of them looked around. The defendant said he had earned the money that he was in possession *1107 of at the time of his arrest by "working on houses and stuff for his neighbor. He asserted that that he had gotten paid on Friday the day he was arrested. The defendant admitted he had seen the "No Trespassing" sign, but that the owner, "Al," let them sit there. He testified the police walked straight toward him when they exited their unit, and they let everyone else go.
Monique Parker, the defendant's girlfriend, replied in the negative when asked whether the defendant used cocaine or whether she knew of any reason why he would have seventeen rocks of cocaine on his person.
ERRORS PATENT AND ASSIGNMENT OF ERROR NO. 6
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR NOS. 1, 2 & 3
Considering the arguments in these assignments of errors, in light of the defendant's prayer for relief, these assignments the defendant claims that the trial court erred in admitting into evidence the defendant's statement that he did not reside at the residence in question; that the trial court erred in denying the motion to suppress the evidence; and that the evidence was insufficient to convict him, and/or that there was no probable cause to arrest him.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). State v. Marcantel, XXXX-XXXX, p. 8 (La.4/3/02), 815 So.2d 50, 55. Accordingly, the assignment of error directed to the sufficiency of the evidence will be considered first.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is riot called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. *1108 La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
The defendant was convicted of possession of cocaine, a violation of La. R.S. 40:967(C). The State had to prove that the defendant knowingly or intentionally possessed cocaine. La. R.S. 40:967(C).
The testimony in the instant case was that upon seeing the officers the defendant's eyes got big, he made a quick movement with his right hand towards the right side of the steps on which he was sitting, and he got up from the steps and walked toward the officers. Officer Jones said he kept his eye on the spot where he, the suspected defendant, had discarded contraband. This is the same spot where the Officer recovered a plastic bag containing seventeen rocks of crack cocaine. No one else was in the area. The defendant's testimony directly contradicted the police in that he denied discarding any cocaine and said he was, sitting on the steps with four other persons who the police let leave. The defendant confirmed the officers' testimony that there was a "No Trespassing" sign on the residence where he was sitting.
The defendant's girlfriend, Monique Parker, testified to the effect that the defendant did not use cocaine and that she knew of no reason why he would have possessed the cocaine in question.
The defendant argues that Officer Jones' testimony that he never lost sight of the ground where the defendant had apparently discarded something was not credible, because the officers approached in their vehicle from the defendant's left. He submits that, given that the steps were solid concrete, Officer Jones must have lost sight of whatever object had been discarded. The defendant also notes that the area was undergoing complete renovation, and thus Officer Jones' testimony that the area was free of debris also was not credible.
The defendant was convicted of knowingly or intentionally possessing seventeen pieces of crack cocaine. The trial court believed the officers' testimony and disbelieved that of the defendant and his girlfriend. A reviewing court is not called upon to decide whether it believes the witnesses. State v. Rose, XXXX-XXXX, pp. 2-3 (La.App. 4 Cir. 4/13/07), 955 So.2d 270, 272. Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt, that the defendant possessed and discarded the seventeen rocks of crack cocaine Officer Jones found on the right side of the steps where the officers had observed defendant sitting.
There is no merit to any argument that the evidence was insufficient to sustain, the defendant's conviction or that there was insufficient probable cause to arrest him.
As to whether the trial court erred in denying defendant's motion to suppress the evidence, in reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Craft, XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 363; State v. *1109 Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132/137.
The evidence in the instant case establishes that the defendant discarded the cocaine while the officers were driving up the street in their police unit. While the officers admitted that they turned onto the street because of general citizen complaints that individuals were trespassing on the porches of residents, possibly to sell narcotics, there was no evidence that the officers had done anything to signal that they were going to stop and approach the defendant. "When property is abandoned without any prior unlawful intrusion into a person's right to be free from governmental interference, that property may be lawfully seized." State v. Wilson, XXXX-XXXX, pp. 6-7 (La. App. 4 Cir. 1/22/03), 839 So.2d 206, 210, citing State v. Belton, 441 So.2d 1195, 1199 (La.1983) and State v. Handy, XXXX-XXXX, p. 2 (La.App. 4 Cir. 9/25/02), 828 So.2d 1207, 1210. At the point the defendant abandoned the cocaine the officers had not intruded on his right to be free from governmental interference. Accordingly, Officer Jones lawfully seized the cocaine abandoned by the defendant. The trial court properly denied the motion to suppress the evidence.
As to any motion to suppress the statement, it can be noted that it does not appear that the defendant filed a motion to suppress the statement, only a motion to suppress the evidence. The record does not contain any written motion to suppress, either evidence or a statement. A minute entry from October 5, 2006, reflects that a hearing was held that date on a motion to suppress the evidence, and the transcript of that hearing reflects that the trial court denied a motion to suppress the evidence. Only a few lines of the motion to suppress testimony concerned the defendant's making of the statement that he did not live at the residence where he was sitting. However, the record does contain a copy of a State notice of intention to use a statement made by the defendant, which presumably was filed. Even if the defendant did not file a motion to suppress the statement, the State is not free to introduce an inculpatory statement into evidence without first meeting some requirements. It will be assumed for the sake of argument that the statement was inculpatory, however minimally.
This Court discussed the requirements for admission into evidence of an inculpatory statement in State v. Butler, XXXX-XXXX (La.App. 4 Cir. 1/27/05), 894 So.2d 415, as follows:
It is well settled that before the state may introduce an inculpatory statement or confession into evidence, it must affirmatively show that the statement was free and voluntary and not the result of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D); State v. Gradley, 97-0641 (La.5/19/98), 745 So.2d 1160, 1166. The State must prove that the accused was advised of his Miranda rights and voluntarily waived these rights in order to establish the admissibility of a statement made during custodial interrogation. State v. Green, 94-0887, pp. 9-10 (La.5/22/95), 655 So.2d 272, 280; State v. Labostrie, 96-2003, p. 5 (La.App. 4 Cir. 11/19/97), 702 So.2d 1194, 1197. A court must look to the totality of the circumstances surrounding the confession to determine its voluntariness. State v. Lavdlais, 95-0320, p. 6 (La.11/25/96), 685 So.2d 1048, 1053. The testimony of police officers alone can be sufficient to prove the defendant's statements were freely and voluntarily given. State v. Jones, 97-2217, p. 11 (La.App. 4 Cir. 2/24/99), 731 *1110 So.2d 389, 396. (Footnote giving cite to Miranda omitted.).

Butler, XXXX-XXXX, p. 4, 894 So.2d at 418.
Whether a statement was voluntary is a fact question; thus, the trial judge's ruling, based on conclusions of credibility and the weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support it. State v. Byes, 97-1876, pp. 11-12 (La.App. 4 Cir. 4/21/99), 735 So.2d 758, 765; State v. Parker, 96-1852, pp. 12-13 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, 606. The evidence is that Officer Gant merely asked the defendant if he resided at the residence where he was sitting on the steps. There is no evidence that the defendant's response that he did not, but lived in the neighborhood, was not free and voluntary and not the result of fear, duress, intimidation, menace, threats, inducements, or promises.
The defendant appears to argue that at the time his statement was given he was in custody for the crime of trespassing. However, there is no indication that the defendant was ever in custody for the crime of trespassing. Officer Jones testified that the defendant was not booked with trespassing because the officers could not locate the owner of the property. Therefore, there is no merit to that particular claim.
As to a claim that the defendant was in custody at the time he made the statement, during defense counsel's cross-examination of Officer Gant at the motion to suppress hearing the officer was queried concerning his questioning of the defendant about residing at the location, and the officer stated in this regard:
Right. That was after the matter when we found the drugs. I asked him something 
Officer Gant also testified during the motion to suppress "hearing that once his partner found the contraband and advised him of it, he placed the defendant under arrest, after advising him of his Miranda rights.
At trial, Officer Gant stated that the officers stopped the vehicle. His partner exited. Officer Gant called the defendant over to him  although it was clear that Officer Gant had stepped out of the police unit  and informed the defendant he was conducting an investigation to find out whether he lived at the residence or had business there. Officer Gant stated that the defendant informed him he did not reside at that location. The officer was asked by the prosecutor what his partner, Officer Jones, was doing at that time. Officer Gant replied that his partner had relocated to the steps and then advised him of the contraband he found there. Officer Gant stated that at this point he arrested the defendant, placed him in handcuffs, and advised him of his Miranda rights.
The record is somewhat unclear as to when Officer Gant questioned the defendant as to whether he lived at the residence, whether it was prior to his custodial arrest or afterward. If it was after Officer Gant's partner found the contraband and alerted him, and after the defendant was advised of his Miranda rights, then there was no error in admitting the statement.
The defendant essentially argues that there was no evidence he had committed the offense of trespassing, and therefore the officers had no reason to approach him and ask him if he resided at the residence.
Police officers can approach an individual as to whom they have no reasonable suspicion or probable cause to arrest and ask that individual potentially incriminating questions. See State v. Lewis, XXXX-XXXX, p. 3 (La.4/26/02), 815 So.2d 818, *1111 820 ("[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions. . . . is by no means novel; it has been endorsed by the Court any number of times," quoting Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)). "[L]law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen. . . ." Lewis, XXXX-XXXX, p. 3, 815 So.2d at 820, quoting Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).
The next incremental step in police-citizen interaction is the investigatory stop, based on reasonable suspicion of criminal activity. La.C.Cr.P. art. 215.1(A) codifies the U.S. Supreme Court's authorization of stops based on reasonable suspicion set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest; a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37; State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779, p. 6 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 274. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Craft, XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 363; State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
In the instant case, the evidence from both the motion to suppress hearing and the trial is that the officers had citizen complaints of persons trespassing on residents' *1112 porches/steps in the block in question for the purpose of selling narcotics. The officers rounded a corner and spied the defendant sitting on the steps of a residence with a "No Trespassing" sign. When the defendant saw the officers his eyes got big, he nervously made a quick motion with his right hand, and he alighted from the steps and walked toward the officers. At that point Officer Jones exited the police unit and went directly to the ground below where he had noticed the defendant make the quick hand motion.
While Officer Gant testified at trial that he motioned the defendant over to him, the evidence is that Officer Gant was out of the police car and very near the defendant at this point. The testimony was that the defendant got up from the steps and walked toward the officers. While Officer Gant stated that he informed the defendant that he was investigating complaints of individuals trespassing in the area and asked the defendant if he resided at the location where he had been sitting, the encounter between Officer Gant and the defendant could possibly be considered a non-investigatory encounter between a citizen and an officer. If that was the case, Officer Gant had every right to ask the defendant if he resided at that location, without regard to whether Gant had reasonable suspicion.
To the extent the encounter between Officer Gant and the defendant constituted more, it was an investigatory stop pursuant to La.C.Cr.P. art. 215.1 that was justified by the totality of the circumstances  the general citizen complaints the officers had received of individuals trespassing on porches and steps of residents in that block; the observation of the defendant sitting on the steps of a residence in that block; the defendant's actions at the sight of the officers  defendant's eyes got big; he made a quick movement toward the right side of the steps with his right hand; and he quickly got up from the steps and walked toward the officers. Officer Jones also indicated that he had experience with subjects discarding narcotics at the sight of police.
Further, the erroneous admission of an inculpatory statement is subject to the harmless error analysis. State v. Harris, 2001-2730, p. 26 (La.1/19/05), 892 So.2d 1238, 1260. To determine whether an error is harmless, the proper question is whether the guilty verdict actually rendered in this trial was surely unattributable to the error. State v. Snyder, 98-1078, p. 15 (La.4/14/99), 750 So.2d 832, 845. Even assuming that the defendant's statement that he did not reside at the residence was given in response to custodial interrogation prior to defendant being advised of his Miranda rights, or in response to questioning where Officer Gant did not have sufficient reasonable suspicion, any such error would have been harmless, considering the other evidence against defendant.
There is no merit to Assignments of error Nos. 1, 2 & 3.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error the defendant argues that the trial court erred by not ascertaining that he knowingly and voluntarily waived his right to trial by jury.
A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive his right to trial by jury and elect to be tried by the judge. La.C.Cr.P. art. 780(A); State v. Lee, 2001-2082, p. 4 (La.App. 4 Cir. 8/21/02), 826 So.2d 616, 622. The waiver must be express and is never presumed. State v. Santee, XXXX-XXXX, p. 3 (La.App. 4 Cir. 12/4/02), 834 So.2d 533, 534. A waiver of the right to trial by jury *1113 is valid only if the defendant acted knowingly and voluntarily. State v. Kahey, 436 So.2d 475, 486 (La.1983); Santee, supra. However, while the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy.[1]Santee, supra.
In the instant case, the following colloquy occurred between the trial court, the defendant and his attorney:
THE COURT:
Kendal Williams. Mr. Williams, do you understand in this case, you're entitled to a trial by a jury. Six jurors would be selected. All six would have to agree on the verdict. That is, guilty as charged; guilty of attempted possession of cocaine, or not guilty. Do you understand?
THE DEFENDANT:
Yeah.
THE COURT:
You also have a right to waive a trial by jury and elect a trial by judge. This morning your attorney informed me that you wish to elect a trial by judge; is that correct?
THE DEFENDANT:
Yeah.
THE COURT:
And you agree with that, Mr. Band?
MR. BAND:
Yes, sir.
In Lee, supra, the trial court questioned the defendant in the presence of his attorney, asking him: "Sir, do you understand you have a right to trial by judge or jury?" Lee, 2001-2082, p. 5, 826 So.2d at 622. The defendant responded affirmatively. The trial court then asked the defendant: "Tell me what type of trial you elect to proceed by." Id. The defendant replied: "I would like to go with a judge." Id. This Court held that this colloquy clearly established that the defendant articulated his desire to waive his right to a jury trial, and it thus rejected his argument that the record failed to show that he made a knowing and intelligent waiver of his right to a jury trial.
In the instant case, the evidence that the defendant knowingly and voluntarily waived his right to trial by jury is even stronger than it was in Lee, supra. Accordingly, the defendant in the instant case made a knowing and voluntary waiver of his right to trial by jury.
There is no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 5
By this assignment of error the defendant essentially argues that his counsel was ineffective, mentioning that counsel failed to elicit sufficient testimony at the motion to suppress hearing and at trial.
"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 183; State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, *1114 126. In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La. App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
This Court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bordes, 98-0086, p. 8 (La. App. 4 Cir. 6/16/99), 738 So.2d 143, 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id. quoting State v. Brooks, 505 So.2d 714, 724 (La.1987).
The defendant fails to point to any specific deficiency on the part of trial counsel. Even if it is assumed that trial counsel failed to file a motion to suppress the defendant's statement that he did not reside at the residence and that counsel's performance was thereby deficient, the defendant suffered no prejudice as a result of any such deficiency, as discussed hereinabove.
There is no merit to this assignment of error.
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).