MADELEINE M. LANDRIEU, Judge.
| TJohn H. Spells appeals his conviction and sentence for the crime of home invasion. Por the reasons that follow, we affirm the conviction, vacate the sentence, and remand for resentencing.

STATEMENT OF CASE

The State charged Mr. Spells with home invasion, a violation of La. R.S. 14:62.8.[1] Mr. Spells was arraigned and pled not guilty. Prior to trial, he filed a motion to suppress the evidence, which was denied by the trial court a December 2, 2011 hearing.
Mr. Spells was tried on January 17, 2012, and a jury found him guilty of the charged offense. On March 16, 2012, the trial court denied Mr. Spells’ motions for new trial[2] and post-verdict judgment of acquittal, and sentenced Mr. Spells to six years at hard labor, to be served concurrently with any and all sentences he was | ^already serving; the trial court also imposed a fine of $1,000.00. That same date, the trial court denied Mr. Spells’ motion to reconsider sentence.[3]
STATEMENT OF FACT
The victim, Robella James, rents and lives in the apartment that Mr. Spells was convicted of invading. Ms. James’ daughter, Jeavan James, and her two-year-old grandson, Zamia, live with her. Ms. James testified that she had dated Spells for six years, but the relationship had ended by August 23, 2011. That evening at about 10:45 p.m., Ms. James was playing cards with Arnold Ballard when Mr. Spells knocked on the door. Her daughter and grandson were in their bedroom. When Ms. James informed Mr. Spells that she had company, he left, but he returned about forty-five minutes later.
Mr. Spells knocked on the door, but Ms. James refused him entry into the apartment. Mr. Spells then kicked in the front door and charged at Ms. James while carrying a sharp object. Ms. James retreated to Jeavan’s bedroom, telling her daughter to call the police. Mr. Spells exclaimed, “B_, I’ll kill you!” A physical altercation ensued between Mr. Spells, Ms. James and her daughter. Ms. James was on the bed as Mr. Spells tried to stab her with the sharp object — a pair of scissors. Zamia was in the bed too — sleeping by the edge of the bed near the air conditioner. Ms. James and Jeavan managed to recover the scissors from Mr. Spells. Jeavan pushed Mr. Spells, and Ms. James was able to escape the apartment |swith the scissors. Ms. James immediately went to the police station and turned the scissors over to the police.
At trial, Jeavan confirmed her mother’s story, adding that she feared Mr. Spells *1013 was going to run her mother over with his van as she ran to the police station. Jeav-an confirmed that Spells had a sharp object in his hands when he entered the apartment, and stated that he tried to “jug” her mother with it. However, she could not specify what the sharp object was.
Jeavan testified that she stayed in the apartment and called 911 right after her mother ran out with Mr. Spells pursuing her. Jeavan testified that the police arrived at the apartment while her mother was at the police station. Her son slept through the commotion, awaking between the time that Mr. Spells and Ms. James left the apartment and the police arrived.
Officer John Walker testified that he initially responded to the 911 call made on August 28, 2011. While on his way to the apartment, Officer Walker was informed that Ms. James was at the police station. He instead went to the station and instructed Officer Ivory Warren to go to the apartment.
Officer Walker testified that when he arrived at the station, Ms. James was distraught because she feared for her safety, and he had to calm her down. Officer Walker collected the scissors from her as evidence, which he identified at trial. After speaking with Ms. James at the station, Officer Walker escorted her safely back to her apartment, where he interviewed Jeavan. Officer Warren was at the apartment when Officer Walker arrived. Officer Walker then returned to the police |4station to prepare an arrest warrant based upon the information given him by the victims. At trial, Officer Walker identified a picture of the apartment door and noted that it “show[ed] physical sign that the door was defeated, and a key wasn’t used. It was defeated by force.”
Officer Warren testified that when she arrived at the apartment, the first thing she observed was condition of the front door. It was “freshly damaged.” A sofa was lodged against the door, and Jeavan moved the sofa and helped Officer Warren push the door open. Jeavan appeared scared from the “event.”
Mr. Spells’ father, John Henry Spells, Sr., also testified at trial. According to the father, Mr. Spells and Ms. James had previously lived in an apartment that Mr. Spells, Sr., owned, which was next to his home. However, Mr. Spells, Sr., testified that he had asked Ms. James to leave prior to August 23, 2011 because of her drug use.

ERRORS PATENT; COUNSEL’S MOTION TO WITHDRAW

Complying with the procedures outlined in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990), Mr. Spells’ appellate counsel has filed a brief requesting a review for errors patent. Counsel’s brief also complies with the requirements enunciated in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, which requires that it contain “a detailed and renewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.” Id., p. 3, 704 So.2d at 242. Counsel’s detailed review of the | r,procedural history and facts of the case reflect her thorough review of the record. Because she believes, after a conscientious review of the record, including available transcripts, that there is no non-frivolous issue for appeal, counsel has filed a motion to withdraw.
As required by Benjamin, this court has performed an independent review of the record and the Anders brief filed by appellate counsel. Our review of the record reveals an error patent in the sentence. *1014 The bill of information shows that Mr. Spells was charged with:
THE CRIME OF HOME INVASION BY THE UNAUTHORIZED ENTRY OF AN INHABITED DWELLING at [address] BELONGING TO ROBELLA JAMES, WHERE A PERSON under the age of twelve was present, WITH THE INTENT TO USE FORCE OR VIOLENCE UPON THE PERSON OF ANOTHER OR TO VANDALIZE, DEFACE OR DAMAGE THE PROPERTY OF ANOTHER.
The bill of information also has a January 17, 2012 notation, “LA RS 14:62.8.”
At the time the crime was committed, the home invasion statute provided a general sentencing range of five to ten years at hard labor, five of which must be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:62.8(B)(1) (West 2011). It also allowed for a fine of up to $5,000 to be imposed. However, if the crime was committed while a person under the age of twelve, over the age of sixty-five, or disabled was present, then the sentencing range was ten to twenty-five years at hard labor, with a fine of up to $10,000 allowed. La. R.S. 14:62.8(B)(2) (West 2011).
| ,;In this case, the record reflects that the trial court judge believed the minimum allowable sentence was a $1000.00 fine and six years imprisonment. However, this sentence does not comport with the mandates of La. R.S. 14:62.8(B). The charging document specified the presence of a two-year-old (i.e. a person under the age of twelve), which is consistent with a charge under La. R.S. 14:62.8(B)(2). Therefore, the sentence must be vacated, and the case remanded in order for the issuance of a legal sentence in accordance with La. R.S. 14:62.8(B)(2).
Other than this patent error, our independent review reveals no non-frivolous issue for appeal and no trial court ruling that arguably supports the appeal. Accordingly, we grant counsel’s motion to withdraw.

DISCUSSION OF DEFENDANT’S PRO SE ASSIGNMENTS OF ERROR

Mr. Spells has filed a pro se brief wherein he essentially asserts multiple errors that can be consolidated into two assignments: 1) insufficiency of the evidence; and 2) improper closing argument by the State — referral to Mr. Spell’s pre-arrest silence.

1. Insufficiency of the Evidence

Mr. Spells points to the absence of certain evidence and asserts several factual arguments.[4] Taken together, these arguments amount to an attack on the sufficiency of the evidence supporting his conviction.
|7In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the *1015 record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id., 523 So.2d at 1309-1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Williams, 2007-0700, p. 5 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1108. The determination of whether the requisite intent is present in a criminal case is an issue for the trier of fact. State v. Huizar, 414 So.2d 741, 751 (La.1982).
Mr. Spells was convicted of a home invasion, which is defined as the “unauthorized entering of any inhabited dwelling, or other structure belonging to another and used in whole or in part as a home or place of abode by a person, where a person is present, with the intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.”
Ms. James testified at trial that when she refused to let Mr. Spells into the apartment where she lived with her daughter and grandson, Mr. Spells kicked the door in and then attacked her with a pair of scissors. Thus, Ms. James testimony establishes “unauthorized entry of’ an “inhabited dwelling ... where a person is present, with the intent to use force or violence upon the person.” The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306. A factfin-der’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996. Therefore, Ms. James’ trial testimony alone is sufficient to sustain Mr. Spells’ conviction.
Mr. Spells argues that the photographs presented at trial do not support the jury’s finding that the door was forced open because there are no pictures of the door casing. He also asserts that Officer Warren tampered with the evidence by |flpeeling away duct tape attached to the middle of the door. One of the photographs entered into evidence shows a door with a door knob above and a bolt lock below. Duct tape appears to be peeling off from the side of the door in the area of the door knob. However, the picture also shows broken wood by the bolt below. At trial, Ms. James explained that the upper door knob had been broken prior to the incident. Nothing in the picture or other parts of the record contradicts Ms. James’ testimony that the door was forced open. Nothing in the record indicates evidence tampering. Accordingly, considering the evidence in a light most favorable to the prosecution, the establishment of the elements of home invasion is supported by the record.
Mr. Spells also references a police report, a copy of which he has provided to this court. The record reflects that this report was not introduced as evidence at *1016 trial.[5] Accordingly, it is not part of the record on appeal and cannot be considered. See State v. Santos, 2008-0198, p. 8 (La.App. 4 Cir. 10/8/08), not reported, 2008 WL 4684663 (police reports not introduced at trial could not be considered on appeal).

2. State’s referral to defendant’s pre-arrest silence

Mr. Spells asserts that the State, in its rebuttal closing argument, violated his Fifth Amendment right to remain silent. The basis for Mr. Spells’ complaint is the following excerpt from the prosecutor’s argument:
In opening, defense counsel said she attacked him but she called 911. She attacked him, but the daughter is also giving the same Inconsistent statement that he came in with that knife — excuse me — with those scissors. She attacked him, but did he go to the police? Did he call 911? Did he come back to the scene and say, [“]this is a mix up. She attacked me.” He ducked tail and ran because he knew he did wrong. He knew he kicked in that door. Here are these two women and their two-year-old grandchild. He didn’t tell the police any of this. Nowhere from this stand did she say she attacked him with the scissors.
The defense counsel moved for a mistrial based upon this statement, which was denied.
Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), prohibits the prosecution from impeaching a defendant’s trial testimony with evidence that he remained silent after being arrested and advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Richards, 99-0067, p. 1 (La.9/17/99), 750 So.2d 940. The decision in Doyle rests on the premise that Miranda warnings render the subsequent silence of a defendant “insolubly ambiguous,” (Doyle, 426 U.S. at 617, 96 S.Ct. at 2244), and thereby make later use of that silence to impeach his or her exculpatory testimony at trial fundamentally unfair. Id., 426 U.S. at 618, 96 S.Ct. at 2245; Richards, 99-0067, p. 1, 750 So.2d at 940.
However, “[i]n the case of pre-ar-rest silence,” in which “[t]he failure to speak occur[s] before the petitioner [is] taken into custody and given Miranda warnings,” and in which “no governmental action induce[s] petitioner to remain silent,” “the fundamental unfairness present in Doyle is not present.” Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980). “Neither Doyle specifically, nor the Due Process Clause generally, bars the inquiry.” Jenkins, 447 U.S. at 239-40, 100 S.Ct. at 2129-30; Richards, 99-0067, p. 2, 750 So.2d at 941.
^Nevertheless, as the Jenkins and Richards Courts both acknowledged, the individual states may afford greater rights than the U.S. Constitution requires, and therefore may protect the defendant’s pre-arrest silence under certain circumstances. As the Court in Richards noted:
The federal constitution therefore leaves undisturbed the common law tradition which “allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.” Jenkins, 447 U.S. at 239, 100 S.Ct. at 2129 (citing 3A J. Wigmore, Evidence, § 1042, p. 1056) (Chadbourn rev.1970).
*1017 Jenkins expressly cautioned that it did “not force any state court to allow impeachment through the use of prear-rest silence.” Id., 447 U.S at 240, 100 S.Ct. at 2130. Each jurisdiction therefore remains free to strike its own evi-dentiary balance and to exclude evidence of a defendant’s silence under circumstances in which the federal constitution would not bar it.
Id., 99-0067, pp. 2-3, 750 So.2d at 941.
In Richards, which involved the prosecution’s attempt to impeach the defendant by referring to his silence, the Louisiana Supreme Court did not address whether Louisiana law prohibits prosecutors from referring to a defendant’s pre-arrest silence in any circumstance. Id., p. 3, 750 So.2d at 941. Instead, the Court found that the defendant in that case had waived his right to remain silent by testifying at trial; and further, that the defense counsel’s objection to improper impeachment had been waived by counsel’s failure to specify a basis for objection. Id., pp. 3-4, 750 So.2d at 941-942.
Thus, the Louisiana Supreme Court has not decided whether Louisiana law prohibits referral to a defendant’s pre-arrest silence at trial. As this court has not addressed the issue either, we are inclined to follow the federal rule that pre-arrest | ^silence may be referred to. This rule was applied by our colleagues on the Second Circuit in State v. Harrison, 46,-325, pp. 25-30 (La.App. 2 Cir. 5/18/11), 69 So.3d 581, 596-598 (Prosecution asking whether defendant spoke to police at any point was a permissible reference to pre-arrest silence), and by the First Circuit in State v. Pernell, 2010-369 (La.App. 1 Cir. 9/10/10), unpublished, 2010 WL 3526487 (Prosecution’s opening statement reference to defendant’s failure to deny ownership of drugs to police was a permissible reference to defendant’s silence prior to his being given Miranda warning).[6]
We therefore find no error in the trial court’s allowance of the prosecution’s statement in the present case. Even if we had concluded that the trial court erred, however, we would find such error to be harmless in light of the significant evidence of defendant’s guilt. See State v. Harrison, supra, p. 27, 69 So.3d at 597 (noting that a Doyle error is subject to a harmless error review).

CONCLUSION

Accordingly, for the reasons stated, we grant defense counsel’s motion to withdraw, affirm the defendant’s conviction, vacate his sentence, and remand the matter to the trial court for the issuance of a legal sentence in accordance with La. R.S. 14:62.8(B)(2).
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED

. A January 17, 2012 written notation on the bill of information states, "LA RS 14:62.8(2).’’

. The motion for new trial concerned the State's reference to Mr. Spell’s pre-arrest silence in rebuttal closing arguments.

.The State also filed a multiple bill of information, charging Mr. Spells with being a four time felony offender. The record does not reveal the disposition of multiple offender proceedings.

. Some of these arguments allude to facts that are not in the record, and therefore cannot be considered.

. While the report was used to refresh Officer Walker's memory, the prosecution specified, "It’s not being offered to publish to the jury. It’s just to refresh his recollection.”

. We note that in Pemell, as in the instant case, the defendant did not testify at trial.