STATE OF LOUISIANA      *      NO. 2024-K-0354

VERSUS      *

     COURT OF APPEAL

JAMES E. TATE      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 560-640, SECTION "I"
Honorable Leon T. Roche,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

**LOVE, C.J., DISSENTS AND ASSIGNS REASONS**

Jason R. Williams
DISTRICT ATTORNEY, PARISH OF ORLEANS
Zachary M. Phillips
ASSISTANT DISTRICT ATTORNEY
619 South White Street
New Orleans, LA 70119

         COUNSEL FOR RELATOR/THE STATE OF LOUISIANA

Sara Wood
Jacob McCarty
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

         COUNSEL FOR RESPONDENT/JAMES E. TATE

                         **WRIT GRANTED;
RELIEF DENIED
July 11, 2024**

In this criminal case, the State of Louisiana seeks supervisory review of the district court's May 17, 2024 ruling granting the motion to suppress filed by the defendant—James Tate—and finding of no probable cause. We grant the State's writ, but deny relief.

## FACTUAL AND PROCEDURAL BACKGROUND

The district court, in its written reasons for judgment, summarized the pertinent facts as follows:

> While on patrol, [on December 21, 20213, O]fficers [Caldwell and Carroll (the "Officers")] happened upon a parked, silver or grey Camaro with red stripes. It is undisputed that neither officer witnessed the vehicle being operated at the time or shortly before the stop, and it was parked in the private parking lot of an active residential apartment complex, with the passenger-side door open. Officers immediately pulled in behind where the Camaro was parked, and activated their lights and sirens, indicating that they were conducting a "suspicious vehicle stop" of the car's occupants. Mr. Tate was sitting in the passenger seat, and was then detained in handcuffs by Off. Carroll. The officers subsequently submitted for and received a search warrant for the vehicle. They recovered two guns and narcotics from various locations in the vehicle.
>
> Mr. Tate was arrested and charged with unlawful possession of a machine gun; possession of a firearm by a felon; and possession with the intent to distribute

cocaine and marijuana, violations of La. R.S. 40:1752; 14:95.1; 40:966(A)(1); and 40:967(B)(1)(a), respectively. After pleading not guilty to all the charges, Mr. Tate filed a motion to suppress the evidence. Following a hearing and briefing, the district court granted the motion and provided detailed reasons for judgment. This writ application followed.

## DISCUSSION

The dispositive issue is whether the Officers had reasonable suspicious to conduct the investigatory stop of Mr. Tate. As the district court observed, "[v]ehicle stops and the seizures of passengers, like the one at issue here, are evaluated under the same standard as a stop-and-frisk." *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The relevant statutory provision is La. C.Cr.P. art. 215.1(A), which provides:

> A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

The reasonable suspicion standard required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). A reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify infringing on the suspect's rights. *See State v. Williams*, 07-0700, p. 11 (La. App. 4 Cir. 2/13/08), 977 So.2d 1101, 1111.

Here, a trio of grounds were cited in support of the position that the Officers had reasonable suspicion to justify the investigatory stop: (i) the vehicle's lack of a license plate; (ii) the Officers' prior spotting the vehicle speeding; and (iii) the Officer's prior spotting the vehicle at various drug hotspots. The district court, in its written reasons, rejected each of these grounds. We separately address each ground.

<u>Vehicle's Lack of a License Plate</u>

In addressing the lack of a license plate ground, the district court cited New Orleans Municipal Code § 154-307(a), which provides:

> Every person who is a resident of the state and owns a motor vehicle of any description must first obtain an appropriate, current, valid license plate from the state before driving his motor vehicle upon any public streets of the city.

Applying this ordinance here, the district court observed that, assuming the Camaro lacked a license plate, no traffic violation occurred for the following reasons:

> It is undisputed that the Camaro was not being operated at the time of this stop. It was parked in the parking lot of a residential apartment complex, where people still lived. The passenger side door was open with Defendant in the passenger seat of the Camaro. It is not a traffic violation for a vehicle, which is not being operated to not bear a license plate.

Although the district court stated that the Camaro was not being "operated," its statement, viewed in context, was a finding that the Camaro was not being driven on a public street. Rather, the Camaro, at the time of the investigatory stop, was parked in in a parking lot of an apartment complex. Because the Camaro was

3

not being driven on a public road, its lack of a license plate was not a traffic violation. We agree.

Officers' Prior Spotting of The Vehicle Speeding

In finding the prior spotting of the vehicle speeding an insufficient ground to establish reasonable suspicion, the district court observed:

> Could [the Officers] stop a car they believe they saw speeding a month after they claim to have seen the traffic offense? Does this give them reasonable suspicion to stop the car a year later? Ten years later? Here [the Officers] testified that they witnessed a Camaro driving recklessly at some indeterminate time within the last week. They could not give a specific amount of time which had elapsed since witnessing that alleged reckless driving (speeding). Additionally, [the O]fficers testified that they did not see who was driving at the time of the reckless incident, and could not identify [Mr. Tate] as the driver. Therefore, this incident cannot be used as the basis for officers' reasonable suspicion that [Mr. Tate] had committed a crime for which they were initiating a stop of [Mr. Tate].

The district court thus found that the Officers' observations of the Camaro—assuming it was the same vehicle[1]—speeding within the last week were too attenuated to serve as reasonable suspicion for the stop. We agree.

Officers' Prior Spotting This Vehicle at Various Drug Hotspots

The final ground was the Officers' assertion that they had spotted the Camaro at various drug hotspots in New Orleans East. Rejecting this ground, the district court cited the principle that reasonable suspicion must be based on the

---

[1] The district court also questioned whether the Officers could even identify the Camaro they spotted earlier as the same Camaro they stopped; the district court observed:

> This Court has serious concerns based on one officer claiming no license plate was on the Camaro that could identify it from any other Camaro, and the other officer claiming there was a yellow license plate on the Camaro. Based on the contradictory statements of the officers as it relates to the Camaro having a license plate vs. not having a license plate, the Court has serious doubts as to if this was indeed the same Camaro officers claim to have observed at some undetermined time within the last week [speeding]

person, not the vehicle. Applying this principle here, the district court reasoned that the Officers could neither identify any of the Camaro's occupants that they spotted at the various drug hotspots, nor confirm that Mr. Tate was present at any of those hotspots. Regardless, the district court observed that "[e]ven if [the Officers] had, in [*State v.*] *Ratliff*, [98-0094 (La. App. 4 Cir. 5/19/99), 737 So.2d 252], the Fourth Circuit found the officers did not have reasonable suspicion to stop and detain the defendant, who was merely standing in a high-crime area, known for drug activity." According to the district court, the same logic applies here. We agree.

## CONCLUSION

In sum, none of the three grounds asserted by the Officers provided reasonable suspicion to support the investigatory stop. Since the stop was constitutionally infirm, the district court did not err in granting Mr. Tate's motion to suppress. Accordingly, we grant the State's writ application, but deny relief.

**WRIT GRANTED; RELIEF DENIED**