| STATE OF LOUISIANA | * | NO. 2025-K-0541 |
| | | |
| VERSUS | * | |
| | | COURT OF APPEAL |
| ARIAL VALENCIA-LACAYO | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 565-888, SECTION "F"
Honorable Robin D. Pittman
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *

(Court composed of Judge Sandra Cabrina Jenkins, Judge Nakisha Ervin-Knott,
Judge Monique G. Morial)


Caylin Grosse
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

    COUNSEL FOR RELATOR

Liz Murrill
Louisiana Attorney General
J. Bryant Clark, Jr.
J. Taylor Gray
Louisiana Department of Justice
Post Office Box 94005
Baton Rouge, LA 70804

    COUNSEL FOR RESPONDENT


**WRIT GRANTED;
JUDGMENT REVERSED
OCTOBER 6, 2025**

Relator, Arial Valencia-Lacayo, seeks review of the district court's July 23, 2025 judgment which denied Relator's motion to suppress evidence and statements.  For the reasons that follow, we grant Relator's writ application and reverse the judgment of the district court.

### FACTUAL AND PROCEDURAL HISTORY

On March 3, 2025, Louisiana State Troopers Cory Himel and Austin Vigurie (collectively, the "Troopers") were assigned to "Troop NOLA" to patrol the Bourbon Street area during Mardi Gras festivities.  Louisiana State Police Sgt. Jack Uhle was conducting surveillance in the area.  Sgt. Uhle contacted the Troopers on his police radio.  Sgt. Uhle identified Relator "as a known drug dealer" and said Relator was "soliciting" to sell drugs, so he wanted the Troopers to detain him.  Sgt. Uhle described Relator as tall, and "wearing a black jacket with white lettering on the sleeves and the back," with "a gray hoodie underneath."

After observing someone who matched the description, Trooper Himel and other officers in the area detained Relator "off the street" and secured him in handcuffs. Trooper Himel conducted a pat-down for weapons and felt what he

1

described as "blister packs" in Relator's front right pocket. Trooper Himel recovered a total of twenty-six pills, all of which later tested positive for Tapentadol.

Trooper Vigurie administered *Miranda* warnings to Relator.[1] Relator subsequently stated to Trooper Vigurie that a "pickpocket" had inserted the contraband in Relator's pocket. A search incident to Relator's arrest recovered $210.00 in cash from Relator's right rear pants pocket.

Relator was charged with one count of possession with the intent to distribute a controlled dangerous substance, to wit, Tapentadol, a violation of La. R.S. 40:967(B)(1)(a). On April 25, 2025, Relator filed an omnibus motion, which included, *inter alia*, a motion to suppress evidence and statements.

Following a hearing, the district court denied Relator's motion to suppress the evidence and statements and found probable cause. Thereafter, Relator timely noticed his intent to seek a writ to set aside the judgment.

## ASSIGNMENTS OF ERROR

Relator contends the district court erred in denying his motion to suppress evidence and statements because (1) the Troopers lacked reasonable suspicion to conduct an investigatory stop; and (2) the Troopers performed a warrantless, unlawful search of Relator's person.

## STANDARD OF REVIEW

In reviewing a district court's decision on a motion to suppress, an appellate court reviews the district court's determinations of fact for abuse of discretion, and legal decisions are reviewed *de novo. See State v. Candebat*, 2013-0780, pp. 6-7 (La. App. 4 Cir. 1/30/14), 133 So.3d 304, 308 (citations omitted).

---

[1] Trooper Vigurie did not participate in the initial stop of Relator.

**DISCUSSION**

Investigatory Stop/Reasonable Suspicion

Louisiana Code of Criminal Procedure art. 215.1 provides:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.

*See also Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) ("A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

The reasonable suspicion standard required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). A reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. *State v. Williams*, 2007-0700, p. 11 (La. App. 4 Cir. 2/13/08), 977 So.2d 1101, 1111. This Court discussed the balance between the invasion of an individual's privacy rights and the reasonableness of an investigatory stop in *State v. Marzett*, 2009-1080, pp. 5-6 (La. App. 4 Cir. 6/9/10),

3

40 So.3d 1204, 1208 (quoting *Williams*, 2007-0700, pp. 11-12, 977 So.2d at 1111)

as follows:

> In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop. The officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be given to the experience of the officer's present at the time of the incident.

The determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is an objective inquiry that considers all of the information known collectively to the law enforcement personnel involved in the investigation. *State v. Elliott*, 2009-1727, p. 5 (La. 3/16/10), 35 So.3d 247, 251. As amplified in *State v. McClendon*, 2013-1454, p. 4 (La. App. 4 Cir. 1/30/14), 133 So.3d 239, 244, reasonableness dictates the balance between legitimate law enforcement concerns and an individual's protected privacy interests. In applying these precepts to the totality of circumstances which triggered Relator's stop, on balance, we find the investigatory stop in this matter was not reasonable.

Here, both Troopers testified that the extent of their knowledge of Relator's alleged criminal activity was based on Sgt. Uhle's representation that he knew Relator to be a drug dealer and had reportedly observed Relator "soliciting the sale of narcotics" at some point. When questioned on direct examination as to the activities observed to show Relator was "soliciting to sell drugs," Trooper Himel responded, "I didn't see those activities ma'am. That would be Trooper, I mean,

4

Sergeant Uhle, but he - - I don't know if he wrote a supplement on this, but that would be on him as far as what he exactly saw him doing." On cross-examination, Trooper Himel reiterated, "I did not see what Mr. Ariel, Mr. Valencia, had done prior to my interaction with him. Sergeant Uhle notified us that he recognized him, he's aware of him, he knows him as a drug dealer, and said he was soliciting." Trooper Himel admitted that he did not remember Sgt. Uhle "going into that much detail" about what he saw; instead, "[i]t was more like an order. Like, here's your orders, and here you go." Trooper Himel had no independent familiarity with Relator or personal knowledge of Relator engaging in any past transactions. His testified that "[I] [n]ever seen him before in my life that I can recall, ma'am." Similarly, Trooper Vigurie testified that Relator was only brought to his attention because "[w]e received a tip from Sergeant Jack Uhle that Mr. Valencia was a known drug dealer in the area." Trooper Vigurie also did not observe Relator conduct any hand-to-hand drug transactions and did not see Relator handle any cash prior to the stop.

Although the district court found the Troopers' testimony credible, the Troopers failed to provide with any specificity articulable facts describing Relator's observed actions from which the district court could objectively determine the reasonableness of the stop or support the reliability of Sgt. Uhle's "tip." In particular, the Troopers offered no testimony to substantiate Sgt. Uhle's contention that Relator was a known drug dealer. Notably, Sgt. Uhle did not testify at the hearing on the suppression motion and the Troopers admitted they did not independently observe conduct that showed Relator engaged in "soliciting the sale of narcotics." Although a district court may consider an officer's experience, training, and common sense in determining whether his or her conclusions are

5

reasonable based on the underlying facts, here, the Troopers supplied no corroborating facts or first-hand observations to show they had a reasonable basis to stop and investigate Relator for drug solicitation.

Accordingly, based on the totality of the testimony offered at the hearing, we find the district court abused its discretion in finding reasonable suspicion existed to support Relator's investigatory stop.

As a result of our finding that there was no reasonable suspicion to justify the investigatory stop, we agree with Relator's argument that the Tapentadol seized and his statements were unlawfully obtained, and therefore should be suppressed. "Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized as a result is inadmissible." *State v. Abrego*, 2021-166, pp. 5-6 (La. App. 5 Cir. 12/1/21), 334 So.3d 883, 889. Thus, the physical evidence seized and Relators' statements acquired herein as a result of the unlawful stop must also be suppressed.

## CONCLUSION

Based on the foregoing reasons, we reverse the district court's judgment denying Relator's motion to suppress evidence and statements and grant Relator's writ application.

**WRIT GRANTED;**
**JUDGMENT REVERSED**

6